TAYLOR FEED PEN CO. v. TAYLOR
NAT. BANK. (No. 92–2912.)

(Commission of Appeals of Texas, Section A.
Nov. 12, 1919.)

1. CORPORATIONS ⊂⊃476(3)—ULTRA VIRES ATTEMPT TO LEND CREDIT TO OTHER COMPANY.

Where cotton oil company's indebtedness to bank exceeded amount permitted by banking laws, and president of such company formed a feed company with dummy directors, the execution by such feed company of note, secured by deed of trust on all its property to bank to cover other company's excess indebtedness, the bank having full knowledge of the scheme, was ultra vires.

2. CORPORATIONS ⊂⊃388(1) — ESTOPPEL TO URGE ULTRA VIRES.

Where a national bank, to which a cotton oil company owed more money than was permissible under the banking laws, connived with the president of the oil company in his formation of a feed company which ultra vires executed its note to the bank for the amount of the oil company's extra indebtedness, such bank cannot set up, in the feed company's suit to cancel note and deed of trust securing it, that the company is estopped to urge the ultra vires character of the transaction; the bank not having been misled.

3. CORPORATIONS ⊂⊃411 — NO RECOVERY AGAINST FOR MONEY RECEIVED BY DIRECTOR.

The fact that money was received by the director of a creditor company, as a dividend on the bankruptcy of the debtor company, such director never in fact paying all the money to his company, nor applying it to a corporate purpose for the benefit of the company, gave no ground for the recovery of such dividend from the creditor company to a bank holding the note of such company.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Taylor Feed Pen Company against the Taylor National Bank, wherein Mrs. Willie Ripley intervened. From judgment that plaintiff company and the intervener take nothing, and that defendant bank recover on its cross-action, plaintiff and the intervener appealed to the Court of Civil Appeals, which affirmed the judgment as between defendant bank and the intervener, and reversed the judgment as between plaintiff company and the bank, rendering judgment for the company (177 S. W. 176), later, on rehearing, affirming the judgment of the trial court as to all parties (181 S. W. 534), and plaintiff company brings error. Judgment of the trial court and of the Court of Civil Appeals, except in so far as concerns the intervener, reversed, and judgment rendered for plaintiff company on recommendation of the Commission of Appeals.

White, Cartledge & Graves, of Austin, for plaintiff in error.

H. C. Mantor, of Taylor, and Batts & Brooks, of Austin, for defendant in error.

SONFIELD, P. J. In 1910 the Taylor Cotton Oil Works was indebted to the Taylor National Bank, defendant in error, in a sum in excess of the amount the bank was permitted under the national banking laws to loan to one customer. The bank had a mortgage on the property of the cotton oil works, which was considered ample to secure its indebtedness, but desired to reduce the indebtedness to the sum of $25,000, in order to a compliance with the banking laws. F. E. Ripley was the president and general manager of the oil works company, and a stockholder therein. He was indorser on notes of the oil works company to the bank, amounting to $25,000, but was not liable upon the part of its indebtedness represented by the overdraft or open account amounting to $6,500. It was in this sum the indebtedness of the cotton oil works was finally to be reduced. This amount Ripley was anxious to pay, but could not borrow the money. He at that time was the owner of a tract of land containing 58.42 acres. The president of the bank suggested that Ripley sell the land and use the proceeds in paying the open account of the oil works company. This Ripley declined to do, stating it was his homestead, but indicated that he was willing to mortgage the land to secure funds to pay the account. The bank declined to take a mortgage, on account of Ripley's homestead claim. It was thereupon agreed between Ripley and the bank that he would obtain a charter for a feed pen company, convey the land to the corporation for its capital stock, and the corporation would then borrow the money from the bank on the security of a deed in trust on the land, and use the money so borrowed to pay off the open account at the bank. This was done. Plaintiff in error, Taylor Feed Pen Company, was incorporated; its charter being filed on the 5th day of July, 1910. The declared purpose of the corporation, as expressed in its charter, was to buy, feed, and sell cattle. In order to comply with the statute requiring at least three stockholders as a prerequisite to incorporation, Ripley requested E. B. Martin and J. B. Wills to join him in the application for the charter. He stated that they were each to be the owners of one share of stock of the par value of $100, but that both shares would be paid for by him. To this they consented, and, together with Ripley, were named in the charter as directors of the Taylor Feed Pen Company, hereafter referred to as company. On July 26, 1910, the company executed a note in the sum of $6,500, payable to

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the bank, and a deed in trust on the land above referred to, to secure same. On March 6, 1911, the company renewed the note, and executed a new deed in trust on the land to secure its payment.

Prior to the execution of the note and mortgage, Ripley and Martin signed what in terms was a written resolution of the board of directors of the company authorizing the execution of the note and mortgage. Wills, the other director and stockholder, was at the time without the state, and there is no evidence that he then or subsequently had knowledge of the transaction. There was never at any time a meeting of the stockholders or directors of the company, no officers were elected, and no business was transacted by it, other than the transaction here in question.

Upon the execution of the note and trust deed, the bank placed $6,500 to the company's credit, which amount Ripley immediately had transferred to the credit of the cotton oil works; and the cotton oil works was credited with that amount on its indebtedness to the bank. The cotton oil works charged itself on its books with that amount in favor of the company, and this charge was carried on the books of the cotton oil works until it became bankrupt.

Upon the bankruptcy of the cotton oil works, Ripley filed the claim of the company for $6,500, and received a dividend from the bankrupt estate in the sum of $390. This amount received and retained by Ripley was in his possession at the date of the trial.

The company filed this suit to cancel its note and deed in trust, alleging that the latter constituted a cloud upon its title, and that the execution of the note and mortgage was ultra vires the corporation. The bank pleaded, among other matters, estoppel, and filed a cross-action seeking a recovery on the note and foreclosure of its deed in trust.

Mrs. Willie Ripley, wife of F. E. Ripley, intervened, claiming the land as her homestead. F. E. Ripley declined to join his wife as intervener, and was not a party to the suit.

The case was tried before the court without a jury, and judgment was rendered that the company and Mrs. Ripley take nothing by their suits, and the bank recover upon its cross action.

The Court of Civil Appeals affirmed the judgment as between the bank and Mrs. Ripley, denying her claim of homestead, and reversed the judgment as between the company and the bank, rendering judgment in favor of the company. 177 S. W. 176.

On motion, rehearing was granted and the judgment of the district court as to all parties was affirmed. 181 S. W. 534. Mrs. Ripley was not a party to the application for writ of error.

[1] The company, plaintiff below, having alleged the due execution of the note and deed in trust, the question whether, under the facts as set out above, the execution of these instruments can be regarded as corporate acts, is not before us. We are of opinion that, considered as corporate acts, their execution was ultra vires and void, and the company not estopped to plead the same affirmatively and as a defense to the cross-action of the bank.

A corporation is the creature of the law. Its existence, rights, and powers depend upon the will of the sovereign as expressed in its charter and the general laws relating to corporations. It has only such powers as are expressly conferred, or such as by necessary implication arise out of those expressly granted and essential in carrying out the corporate purposes.

Unfortunately, the term "ultra vires" is used in different senses. Under certain states of fact it has been held that a corporation is estopped to urge ultra vires. This has been held in cases where an act was within the authority of the corporation for some purposes or under some circumstances, and in which one dealing with it in good faith could assume the existence of the conditions warranting the act. So, also, it has been applied where the corporation has the power to perform the act, but there is absence of power in the agent or officer, or a disregard of certain formalities required by the law, or an improper use of the power. National Home B. & L. Ass'n v. Home Sav. Bank, 181 Ill. 35, 54 N. E. 619, 64 L. R. A. 399, 72 Am. St. Rep. 245. These, however, are not acts ultra vires in the strict and proper sense. Accurately, the term "ultra vires" applies only to those acts which are wholly beyond the power of the corporation—acts which it has not the power to perform under any circumstances. A contract of this character, it would seem, cannot be ratified, because the power to enter into it is absolutely wanting. In the absence of power to make the contract, there can be no power to ratify it. The mere fact that the other party to the contract has done something thereunder, and the corporation received some benefit thereby, could not take away the incapacity and vitalize the contract. Gaston & Ayres v. Campbell Co., 104 Tex. 576, 140 S. W. 770, 141 S. W. 515; Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778; Deaton Grocery Co. v. International Harvester Co., 47 Tex. Civ. App. 267, 105 S. W. 556; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 58, 11 Sup. Ct. 484, 35 L. Ed. 68; National Home & B. L. Ass'n v. Home Sav. Bank, supra.

This doctrine is recognized by the Court of Civil Appeals in its opinion in this case on rehearing; but the court held that the company had power to borrow money to be used in the execution of its corporate purposes,

and a note and deed in trust executed to secure its payment would be enforceable; that, having this power, the fact that the money so borrowed was used for a purpose other than contemplated by its charter, did not render the act ultra vires in the strict and proper sense; and under the facts the company was estopped.

It cannot be doubted that the company had power to borrow money and give security therefor, in so far as such act was necessary in the carrying out of its charter purposes; and one dealing with it in good faith could enforce payment, notwithstanding a misuse or misappropriation of the money by the company. But this is not such a case. The transaction did not in truth involve a borrowing of money by the company.

Ripley in his testimony correctly described the real transaction, denominating it a "swapping of accounts." In form a loan to the company, it was in fact an apparent assumption by the company of a part of the indebtedness of the cotton oil works to the bank. It is undisputed that it was understood and agreed between the bank and Ripley that the note should be paid out of the earnings of the cotton oil works, and that such earnings should be applied to this note in preference to the other indebtedness of the cotton oil works to the bank. Disregarding all forms and pretenses, the substance of the transaction was a reduction of the cotton oil works' account on the books of the bank to meet the requirements of the national banking laws.

The money apparently derived through the execution of the note was, under the agreement, applied to the debt which the cotton oil works owed the bank. The company had no interest in the cotton oil works or in its indebtedness, and was in no manner indebted to the bank. The contract did not involve the borrowing of money to be used by the company in a manner and for a purpose unknown to the bank, but an apparent loan of money to be used exclusively for a purpose known by the bank to be unauthorized. No money, in fact, passed upon the execution of the note and deed in trust. The company was credited the amount on the books of the bank, the amount was then transferred on the books of the bank as a credit on the indebtedness of the cotton oil works, and the company was credited on the books of the cotton oil works in the amount of the note. The transaction must be viewed in its entirety, and, thus viewed, was undoubtedly ultra vires in the strict and proper sense.

Much confusion and contrariety of opinion obtains in the authorities as to the right of a corporation to plead ultra vires to a contract absolutely void, but which has been performed in whole or in part by the other party, and under which it has received benefits. Some courts adhere with strictness to the rule that no estoppel arises, and that no right of action can be based upon the void contract, remanding the party who has paid, or expended money, or rendered services under it to an action as for money had and received, or on a quantum meruit. Others, deeming the plea under such circumstances inequitable, and promotive of injustice, permit an action on the contract, denying to either party the right to question the power of the corporation.

In the view we take of this case it is unnecessary for us to determine whether, under any circumstances, a corporation is estopped to plead ultra vires affirmatively, or as a defense to a contract of such character.

[2] Those courts permitting an estoppel recognize it in favor of one who, acting in good faith, is prejudicially affected by the conduct of the corporation. The estoppel is predicated upon good faith. Like other estoppels in pais, it can be asserted only by one who has been misled to his injury. It is invoked in furtherance of justice, and allowed only upon equitable grounds. One asserting it must not himself be in default. Knowledge of, and participation in, the wrongful act, precludes a party from urging an estoppel. 10 Cyc. 1162; 16 Cyc. 744, 747. The plea of ultra vires is received in those cases where it does no injustice to the other party. The corporation is foreclosed only when the one dealing with it has entered into the contract without knowledge of the intended wrongful act and without participation therein; in a word, where as an innocent person he has parted with value, or otherwise changed his situation to his prejudice, upon the faith of the contract. Bissell v. Railroad Cos., 22 N. Y. 258.

This case is out of the ordinary. The cases involving ultra vires, and the attendant question of estoppel, are almost innumerable. The question here goes deeper. The bank was a party to the scheme to create a corporation for the sole purpose of doing an unauthorized act exclusively in the bank's interest. It was understood that the corporation would not carry out the corporate purposes as expressed in its charter. Its real purpose was to enable the bank to secure a lien upon the land, which lien the bank now seeks to enforce by invoking an estoppel. The conduct of the company was dictated by the bank. Having itself procured performance of the act by the company, it cannot be heard to say that it was misled to its injury; and is in no position to invoke an estoppel.

The company received no benefit under the contract. If the transaction be regarded as a loan, and if the company actually received the money, the loan was made upon the distinct understanding that it should be immediately applied to a noncorporate and unauthorized purpose. But it was not in fact a loan. The company executed and delivered

the note and deed in trust upon the land— the whole of its property—and in return for its obligation and lien became an unsecured creditor of the cotton oil works in the amount of its note. It would be difficult indeed to conceive of any advantage or profit to the company in such a transaction. So far from adding value to the corporate property —which is the test of benefit—it detracted from its value, involving, as it did, the creation of a lien thereon.

It is urged that Ripley in behalf of plaintiff in error proved up the claim against the cotton oil works company in bankruptcy and received a dividend of $390, which money has never been tendered the bank by the company, and the latter cannot repudiate the contract or defend against it, while retaining this benefit under it.

The evidence established that this money was never in the possession of the company or applied for its benefit to any corporate purpose. It was deposited in the bank to the credit of Ripley, who, according to his testimony, held it for the company, or whoever was entitled to it. The record discloses no authority in Ripley to act for the company in accepting the transfer of the debt, proving up the claim in bankruptcy, or receiving the dividend. He was named in the charter as a director. No meeting of the stockholders or directors was ever held, and no officers were elected. The company cannot be charged with his action in the premises.

[3] Upon the evidence herein there would be no basis for a recovery by the bank of the amount of the dividend from the company. The fact that money was received by Ripley, a director, assuming to act for it, but never in fact paying over the money to it, or applying the money to a corporate purpose for the benefit of the company, would give no ground for recovery. As said by the court in Franco-Texan Land Co. v. McCormick, 85 Tex. 423, 23 S. W. 126, 34 Am. St. Rep. 815:

"Before any such right can exist, it must be shown that the money was appropriated to the use of the company through some corporate agency, acting within the scope of its express or implied authority. Taylor on Priv. Corp. 310–312; Mora on Priv. Corp. 714, 715."

It may be, as suggested in argument, that Ripley is the real party at interest; that the acts, if performed by Ripley, would have been valid and binding; that Ripley will profit by the cause of action asserted and the defense urged, he owning practically all of the stock of the corporation; that in truth Ripley is the corporation, and the corporation is Ripley. No such issue is presented in the record. Ripley is not a party to the suit. Its effect upon him cannot enter into a determination of the case as made. The note and deed in trust are treated in the pleadings as acts of the corporation, and the land, not as the property of Ripley, but of the company. Upon the record before us we are compelled to treat the execution of the note and deed in trust as the acts of the company, and are limited to the questions we have considered. We conclude that the execution of the note and trust deed was ultra vires and the company is not estopped to rely upon the plea in aid of the affirmative relief sought and as defense to the cross-action.

We are of opinion that the judgment of the district court and of the Court of Civil Appeals, except in so far as concerns intervener, Mrs. Willie Ripley, should be reversed, and judgment here rendered for plaintiff in error, canceling the note and deed in trust and against defendant in error on its cross-action.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.