## DESDEMONA STATE BANK & TRUST CO. et al. v. STREETY. (No. 1442.)

(Court of Civil Appeals of Texas. El Paso. March 22, 1923.)

**1. Contracts ☞187(4)—Creditor may sue one assuming the debt.**

The holder of vendor's lien notes assumed by another, although not a party to the assumption contract, may enforce such contract.

**2. Banks and banking ☞96—Bank held authorized to assume obligation of purchase-money notes.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 376, 546, a bank taking a conveyance of land from its debtor as additional security held authorized, as part of the transaction, to assume the obligation of its debtor to pay purchase-money notes which were a lien on the land.

**3. Banks and banking ☞96—Contract aiding objects of banking business not ultra vires.**

A contract of a bank, within the object of its creation, is legal, if not expressly prohibited, if it has a natural and reasonable tendency to aid in the accomplishment of the objects for which the bank is created.

**4. Corporations ☞370(1)—"Ultra vires" defined.**

The term "ultra vires" applies only to those acts which are wholly beyond the power of the corporation to perform under any circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ultra Vires.]

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Action by W. C. Streety against the Desdemona State Bank & Trust Company and others. From judgment for plaintiff, the named defendant and another appeal. Affirmed.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellants.

· A. E. Hampton, of De Leon, for appellee.

WALTHALL, J. This suit was brought by W. C. Streety, against Arthur Kelsey, the Desdemona State Bank & Trust Company, a state banking corporation, H. W. Stuart, special agent of the department of insurance and banking, and others, not necessary to further mention, as they and their interests were properly disposed of in the trial court and are not involved here. The suit was brought to recover upon two promissory

---

notes, each in the sum of 4,925, with interest and attorney's fees, and the foreclosure of a vendor's lien expressed in the notes.

The petition states that the notes were executed by the defendant, Arthur Kelsey, as a part of the purchase money for the real estate described, and that the defendant the Desdemona State Bank & Trust Company purchased from Arthur Kelsey the said land, and by the terms of the deed conveying said property assumed and agreed to pay the two notes here sued on.

The Desdemona State Bank & Trust Company, and all of its effects, properties, and assets on July 20, 1921, were taken over by the commissioner of insurance and banking, and the defendant H. W. Stuart was at the time of the institution of this suit the special agent of the department of insurance and banking, in charge. The defendant bank and Stuart answered by general demurrer, general denial, specially pleaded mutual mistake in the execution of the deed from Kelsey to the bank, in which deed the bank expressed its agreement to assume the payment of the two notes sued on; want of authority on the part of the bank to assume the payment of the two purchase-money notes; want of authority on the part of the executive office of the bank to bind the bank, even if it had authority when properly exercised, to take said property and assume the payment of the two notes against the property, because not specially authorized by an order so to do of the bank's board of directors.

By way of cross-action against Kelsey, the bank and Stuart pleaded a reconveyance by the bank to Kelsey, in which conveyance Kelsey assumed and agreed to pay the two notes sued on, and prayed for judgment over against him in the event it should be held that the bank was obligated on the notes.

Kelsey waived citation and entered his appearance to the plaintiff's suit, and answered by general demurrer and general denial to the bank's cross-action, and specially pleaded thereto to the effect that the reconveyance deed by the bank to him was signed by him by coercion by reason of constant threats of the bank to sell and sacrifice a great amount of property belonging to him, on which property the bank had a lien, etc.

The plaintiff in his petition excepted generally and specially to the answer of the bank and Stuart, answered by general denial, and specially denied the bank's allegation of mutual mistake in the execution of the Kelsey deed to the bank and the assumption of the notes, and specially pleaded that the contract which led to the conveyance by Kelsey to the bank was consummated between J. D. Steakley, the bank's active vice president, and certain others of the bank's officers and agents, who were acting within the apparent scope of their authority, on the one side, and Kelsey on the other, and that the land was purchased by the bank in the transaction in the collection of a debt then owing the bank by Kelsey, and for the benefit and profit of the bank, and that the bank did profit thereby, and that, after the bank had accepted said deed from Kelsey and had assumed the payment of said notes, the plaintiff, Streety, accepted the liability of the bank to him for the payment of said notes as the principal obligor therefor; that the bank thereafter decided it had made a bad trade in accepting the Kelsey deed and assuming to pay the notes, and that the land was not worth the debt against the property, and that for that reason the bank undertook to relieve itself of its assumed liability by reconveying said land to Kelsey, and by coercion, force, and threats induced Kelsey to accept the reconveyance of the property; that in the transaction of the reconveyance the plaintiff was not consulted; that he never consented to the reconveyance to Kelsey, and never consented to release the bank from its assumed liability on the notes. The bank answered by general denial to the special plea of Kelsey.

The case was tried without a jury and resulted in a judgment for plaintiff against Kelsey, the Desdemona State Bank & Trust Company, and H. W. Stuart, special agent of the department of insurance and banking, for $13,218.70, and the foreclosure of the vendor's liens on the property, with judgment over in favor of the bank against Kelsey. The bank and Levi Anderson, Jr., special agent of the department of insurance and banking, successor in office of special agent of Stuart, prosecute this appeal.

The court filed findings of fact and conclusions of law. The findings are well sustained by the evidence, and we adopt them as our own, and make additional findings hereinafter stated. The facts found are substantially as follows:

(1) By deed (general warranty) plaintiff, Streety and wife, conveyed to Kelsey the land described in the petition, and as a part of the consideration therefor Kelsey executed the two notes sued on, and that a vendor's lien was reserved and expressed in the deed and notes, and the deed was duly recorded.

(2) Kelsey conveyed the land to the bank, and as a part of the consideration (expressed in the deed) the bank assumed the payment of the two notes.

(3) J. D. Steakley was the active vice president and manager of the bank, and as such was fully empowered by the board of directors of the bank to manage and conduct the affairs of the bank in any manner he deemed to the best interest of the bank. That in the negotiations that led to the execution of the deed from Kelsey to the bank, Steakley acted for the bank, and wrote or directed the wording of said deed.

(4) There was no order entered upon the minutes of the bank expressly authorizing Steakley to procure the deed from Kelsey,

but, in procuring the making of the deed, Steakley was acting for what at that time appeared to be the best interest of the bank and within the general scope of his authority. The directors of the bank were aware of the transaction in question at its date, and were informed of its nature and effect, and that they did not repudiate or disapprove of the act until about two months after its consummation, and not until the property had suffered a great, but wholly unexpected, depreciation in value.

(5) Thereafter the bank, acting through Steakley, reconveyed the property to Kelsey, and in such conveyance Kelsey assumed the payment of the notes sued on, but plaintiff, Streety, did not acquiesce in said conveyance or have any knowledge of the same at the time. Streety did not learn of the transaction until several weeks after its date and never did accept of said deed, acquiesce therein, or release the bank from its liability on the assumption of the payment of the notes.

(6) There was no mutual mistake of fact in the making of the Kelsey deed to the bank, and no mistake that it was the intention of both parties, as expressed in the deed, that the bank should assume the payment of the notes rather than that it should purchase the land subject to the notes.

We make the additional finding. After Kelsey had purchased the property involved here, he was then indebted to the bank, and for better and as additional security to the bank, and on the request of the bank, and while these notes and the vendor's lien were outstanding against the property, Kelsey gave the bank a deed of trust on this property and other property. Later, and at the request of the bank officials, Kelsey gave the bank the deed to this property, in which deed the bank, as a part of the consideration for the conveyance, assumed to pay the two notes sued on. Later Steakley advised Streety that the bank had assumed the payment of the notes. The court concluded that the bank, by reason of the facts, became liable upon its assumption of the payment of the notes, and that Streety should recover against Kelsey and the bank.

## Opinion.

The appellants bank and Stuart's successor in office, Levi Anderson, present three propositions, substantially to the effect:

First. The obligation of the bank, by reason of its assumption of the notes as recited in the Kelsey deed, was ultra vires and void, in that the bank, under the law creating state banking corporations, had no authority to bind itself by agreement to pay the notes sued on.

Second. (a) Vice president of the bank, Steakley, was without authority to bind the bank on the obligation to assume and pay the notes sued on. His act in assuming to bind the bank was ultra vires and not bind-ing on the bank, even if the bank had the authority, when properly exercised, to take said property and assume the payment of the notes. (b) No facts were pleaded and proved showing that the bank received any benefit from the said act of Steakley, or that the bank in any way ratified his act, or that the position 'of' the plaintiff, Streety, had been altered or changed thereby to his prejudice, by any or either of which the bank would be estopped to deny its or his act.

Third. "A state banking corporation has no power to purchase land and assume the payment of purchase money due thereon by a third person, such act not being within the powers conferred upon such corporation by law, nor incidental to any powers conferred upon it."

[1] There are seemingly two issues presented by the facts reflected by the record, as we view them: First, the interest that Streety, the holder of the notes, has in the matter of the assumption by the bank of the payment of the notes, and the right Streety has to look to the bank for the payment of the notes, he not being a party to the agreement between Kelsey and the bank, or a party to the deed from Kelsey to the bank. Whatever might be the holding in other jurisdictions, that question has been settled against appellants' contention in this state in Allen v. Traylor et al. (Tex. Com. App.) 212 S. W. 945, and cases there referred to, and followed by this court in Strickland v. Higginbotham Bros. & Co. (Tex. Civ. App.) 220 S. W. 433.

[2] The other question presented is whether the bank, under the law creating state banking corporations, had the authority to bind the bank upon its obligation to assume and pay the purchase-money notes sued on. We have concluded that the bank had such authority.

[3, 4] Under article 376, Vernon's Sayles' Texas Civil Statutes, the bank is impowered to loan money upon real estate as security. Article 546 of the same statute provides that the bank may sell all kinds of property which may come into its possession as security for loans, or in the ordinary collection of debts. Prior to the transaction in which the bank assumed to pay the notes sued on, the bank had made a loan to Kelsey, taking a deed of trust on the real estate here involved as its security. The deed of trust was subject to the vendor's lien expressed in the Streety deed to Kelsey and in the notes. In legal effect, the agreement of the bank to assume the payment of the notes was simply that the bank would discharge the prior lien on the property and by doing so protect its second lien. This we think it could do. We think it cannot be successfully asserted that the act of a bank in doing what to it seems best in securing a prior loan, is ultra vires. It acts upon the judgment of its representative, vice president, and general manager, in doing so, and it seems to us is well with-

in its rights under the law in doing so. The right to take over additional property in securing a loan already made is an incidental power, and need not be expressed in its charter or specifically authorized and impowered by the law. A contract of a bank, within the object of its creation, is legal if not expressly prohibited, if it has a natural and reasonable tendency to aid in the accomplishment of the objects for which the bank is created. Exchange Bank of Forth Worth v. Hensley & Roland (Tex. Civ. App.) 240 S. W. 679. In Panhandle National Bank v. Emery, 78 Tex. 498, 15 S. W. 23, without stating the facts, it was held that, where a bank holds a claim, the president may, for the purpose of making the debt, take from the debtor cattle incumbered by other debts; that such act binds the bank, and upon its disposing of the property it is liable to prior lienholders upon such cattle. If the bank would be liable under such circumstances, as in the case last cited, we see no reason why the bank could not, in protection of its interest, assume to pay such liens. Such assumption by the bank would be an act on its part for its own protection, interest, and benefit, an act not prohibited by the law, but incidental to the powers granted, a power which by necessary implication arises out of those expressly granted and essential in carrying out its corporate purposes. As said in Taylor Feed Pen Co. v. Taylor National Bank (Tex. Com. App.) 215 S. W. 850, the term ultra vires "applies only to those acts which are wholly beyond the power of the corporation * * * to perform under any circumstances."

Again, as said by the Galveston court in Bay City Bank & Trust Co. v. Rice-Stix Dry Goods Co. (Tex. Civ. App.) 195 S. W. 344, it seems well settled by the weight of authority that where there is a question of a contract between a corporation and another party, and the contract has been performed by the other party, and the corporation has received the benefit of the contract, it will not be permitted to plead that on entering into the contract it exceeded its charter powers, referring to a number of cases so holding, which we need not here state.

Appellant, both in its brief and oral argument, refers us to the case of National Equitable Soc. et al. v. Alexander et al. (Tex. Civ. App.) 220 S. W. 184, as expressing a view different to that here. We do not so view that case. In that case the National Equitable Society, as expressed in its charter, was formed for the purpose of the accumulation and loan of money, but without banking or discounting privileges. It seems to us that the fact that the National Equitable Society not having the banking privileges and the powers conferred upon such organizations, would distinguish that case from the instant case.

Finding no reversible error, the case is affirmed.

250 S.W.—19

HIGGINS, J. (concurring). The charter of the bank is not in the record, but it is apparent from the admissions in paragraph 4 of its answer, hereinafter quoted, and page 33 of its brief that its charter powers embrace the purposes set forth in article 385, R. S. Bank and trust companies with such charter powers are authorized:

"* * * 3. To lease, hold, purchase and convey any and all real property necessary in the transaction of its business, or which it shall acquire in satisfaction, or partial satisfaction, of debts due the corporation, under sales, judgments or mortgages, or in settlement, or partial settlement, of debts due the corporation by any of its debtors. * * *"

See article 385.

The trial court made no finding upon the issue raised by appellee's pleading and evidence that in acquiring the land the bank did so in partial satisfaction of a debt due by Kelsey to the bank. There is evidence to the effect that Kelsey was heavily indebted to the bank, that it had a deed of trust securing the same upon this and other land owned by Kelsey, and that, in partial satisfaction of the debt and at the instance of the bank, Kelsey conveyed to the bank the land which he had acquired from Streety, the bank assuming the payment of the Streety notes. There was no request for additional findings by the trial court, nor any exception to the findings on the ground of incompleteness. The court's conclusion of law is a general one, and does not disclose the theory upon which it was based. In this condition of the record the court below "will be presumed to have arrived at that conclusion which is necessary to support the judgment." Gardner v. Watson, 76 Tex. 25, 13 S. W. 39.

In view of the fact that the bank acquired the land in partial satisfaction of a debt to it by Kelsey, I am of the opinion that it was expressly authorized to acquire the same by virtue of the third section of article 385, R. S., above quoted.

In the fourth paragraph of its answer the bank avers that:

"While having authority under its charter and the laws of the state of Texas to take real estate in satisfaction of its indebtedness and even to take such real estate subject to liens and incumbrances thereon, nevertheless had no authority to assume the payment of purchase-money notes of a third party, whether a lien on said property or not, and hence, if any such agreement was made, the same was ultra vires and void."

The contention of appellant that its assumption of the lien debt was unauthorized, though it was impowered to acquire the land, is well answered in Woods Inv. Co. v. Palmer; 8 Colo. App. 132, 45 Pac. 237, where a like contention was thus disposed of:

"Now, the general power to purchase real estate necessarily includes the power to pur-

chase incumbered real estate, and the power to purchase incumbered real estate as necessarily includes the power to assume the incumbrance."

The case of National Equitable Society v. Alexander (Tex. Civ. App.) 220 S. W. 184, is not in point, for the reason that in that case the corporation did not acquire the land in satisfaction of a debt due to it, but acquired the same and assumed the payment of the incumbrance in settlement and compromise of a demand against it.

For the reasons indicated, I am of the opinion that the plea of ultra vires is untenable.