### JAMES McCORD CO. v. CITIZENS' HOTEL CO. (No. 11610.)*

(Court of Civil Appeals of Texas. Fort Worth. June 26, 1926. Rehearing Denied Oct. 16, 1926.)

1. Corporations ⬦377(1)—Grocery corporation's subscription for stock in a hotel was a "contribution" to a "civic enterprise" and was not ultra vires (Acts 35th Leg. [1917] c. 15, §§ 1, 3).

Subscription of wholesale grocery corporation for stock in hotel built as civic enterprise *held* not ultra vires, under Acts 35th Leg. (1917) c. 15, §§ 1, 3, permitting corporations to contribute to civic enterprises, since "contribution" means act of contributing or having part in common undertaking, and "civic enterprise" is a project or undertaking in which citizens of a city co-operate to promote common good and general welfare of people of city.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contribute—Contribution.]

─────────────────────
⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction November 24, 1926.

## 2. Corporations ⬥⟹377(I).

That grocery corporation, subscribing to stock in hotel, received capital stock which might be of value did not render subscription any less a "contribution," within meaning of Acts 35th Leg. (1917) c. 15, §§ 1, 3, permitting corporations to contribute to civic enterprises.

## 3. Corporations ⬥⟹374.

Act that is merely incidental and reasonably calculated to accomplish a power expressly granted by law to a corporation is not ultra vires.

## 4. Pleading ⬥⟹291(2)—Defendant corporation, not filing verified plea of non est factum, could not deny plaintiff's allegation that contract executed by vice president was executed by défendant.

In suit on subscription for stock in a hotel signed by vice president of defendant, a wholesale grocery corporation, where defendant did not file verified plea of non est factum, it could not deny allegation that contract was executed by corporation or assert that evidence showed lack of authority in vice president to execute it.

## 5. Appeal and error ⬥⟹742(I).

Where no proposition or statement from record is submitted under an assignment of error, as required by rules 30 and 31 for Courts of Civil Appeals, it will be overruled without determination of its merits.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by the Citizens' Hotel Company against the James McCord Company. From a judgment for plaintiff, defendant appeals. Affirmed.

John W. Wray and Max K. Mayer, both of Fort Worth, for appellant.

W. W. Blume and Flournoy & Smith, all of Fort Worth, for appellee.

DUNKLIN, J. This appeal by the James McCord Company, defendant in the trial court, is from a judgment rendered in favor of the Citizens' Hotel Company, plaintiff, based on a subscription contract for the principal sum of $2,500 in favor of the plaintiff, alleged to have been executed by the defendant.

According to the allegations in plaintiff's petition and evidence introduced upon the trial, plaintiff and defendant each is a private corporation, organized and chartered under the laws of the state of Texas. The plaintiff was incorporated "for the purpose of the establishment, maintenance, erection, and repair of a hotel building in the city of Fort Worth, Tex.," where its business is to be transacted. The erection of the hotel building was undertaken by the citizens of Fort Worth as a community enterprise, in order to provide adequate and much needed hotel facilities for said city by means of a modern, fireproof hotel, commensurate with the requirements of public needs, and the under-

taking was participated in by approximately 775 citizens and private corporations, doing business in the city of Fort Worth, who subscribed for capital stock in the corporation in order to accomplish the end in view.

According to the plan adopted, the hotel was constructed with funds realized from such stock subscriptions, and capital stock in plaintiff corporation was issued to the subscribers in proportion to the amounts subscribed. The subscriptions for stock stipulated for payment whenever demanded by the directors of the plaintiff corporation, and the stock was to be paid for at its full face value.

The defendant, the James McCord Company, was incorporated for the purpose, as stated in its charter, of "buying and selling of goods, wares and merchandise by wholesale; particularly, to do a wholesale grocery business with the various lines usually handled in connection therewith." And the charter further stipulates that:

"The place where the business of said corporation shall be transacted is Fort Worth in Tarrant county, Tex., where its main office will be located."

Originally, the authorized capital stock of plaintiff corporation was $1,609,400, which, on account of an unexpected additional cost of the hotel building, was thereafter duly increased to the sum of $1,840,000, all stock represented by shares of the par value of $100 each. Many of the original subscribers increased their subscriptions by 25 per cent. in order to effect the increase of capitalization of the company. The authorized capital stock of the defendant corporation was $125,000, divided into shares of the par value of $100 each.

The charter of defendant company was dated December 4, 1897, and ever since that date it has conducted a wholesale grocery business in the city of Fort Worth, in accordance with its charter powers.

One of the by-laws of the defendant corporation reads as follows:

"The duty of the president shall be to preside at all meetings of the stockholders and of the board of directors and to have the general management and control of the business. He shall sign all certificates of stock and all other instruments of writing requiring the seal of the corporation, and all other contracts not specially provided for."

Another by-law is as follows:

"The vice president shall discharge the duties of the president whenever the president, for any reason, cannot discharge the duties of his office."

E. M. Schenecker, vice president of the defendant corporation, testified that he, as vice president, subscribed $10,000 for the building of the proposed hotel by the plaintiff, and that that subscription was thereafter paid.

He further testified that Mr. McCord was the president of the company but he lived in St. Louis, Mo., making visits to Fort Worth at the annual meetings of the directors of his company, and in his absence from Fort Worth, his duties were performed by witness. He further testified that his act of subscribing and paying the $10,000 for the purpose mentioned was never protested or objected to by any of the stockholders or directors of the defendant company; that, in fact, the directors authorized him to pay that subscription after it was made. As such vice president, Schenecker made the subscription in controversy ($2,500) for the same purpose. He testified that that subscription was made without authority of the directors or stockholders of his company, and at the earnest solicitation of the promoters of the enterprise, who had discovered that an amount in addition to that first contemplated would be required to finish the building, and that all of the original subscribers would increase their subscriptions by 25 per cent.

. In its petition, plaintiff alleged an original subscription for stock by the defendant, which the record shows was that for the sum of $10,000, as above noted; that thereafter on the 23d day of January, 1920, defendant executed and delivered to the plaintiff its written contract for an additional subscription to the capital stock of the plaintiff corporation in the sum of $2,500, being the one in controversy, to be paid whenever the directors of the plaintiff company should demand payment; said additional subscription being made for the purpose of constructing the hotel as originally contemplated by the persons undertaking the enterprise. It was further alleged, and the proof showed, that the building of a large modern hotel, adequate to the needs of the city of Fort Worth, was a project in which the people of the city felt much pride, and that public spirited citizens and private corporations took stock in it as a matter of civil pride and enterprise to promote the growth of the city and for the benefit of the public, generally. It further alleged that the erection of the hotel was reasonably calculated to promote defendant's business, and, at the time it made the subscription, defendant had reason to believe that it would be benefited along with others doing business in the city of Fort Worth.

It was further alleged that the stock subscriptions made by the defendant were not for the purpose of launching it into the hotel business, but for the purpose of promoting a project of great moment to the city. There were further allegations to the effect that the defendant had refused to pay the subscription of $2,500 after due demand made therefor.

In its second amended original answer upon which defendant went to trial, the defendant, in addition to a general demurrer and a general denial, pleaded specially the provisions of its charter, set out above, alleged to have been originally issued April 29, 1909, and filed with the secretary of state of this state, June 11, 1910; that ever since its incorporation defendant has been engaged in the business specified in its charter and in none other; and, further, that if the subscription contract alleged in plaintiff's petition was made by the defendant, the same "was wholly without authority of law, was absolutely void and unenforceable, all of which it stands ready to verify." There was a further allegation to the effect that defendant is not liable on the contract for the further reason that Schenecker signed the subscription sued on upon the condition and with the understanding that it would not be payable unless additional subscriptions, aggregating 25 per cent. of all those originally subscribed, should be procured; which condition was never performed. That answer contained no verified plea that the subscription contract was signed in defendant's name without authority of its board of directors or stockholders.

The trial of the case was before a jury, to whom was submitted two special issues. Those issues, with the answers of the jury thereto, were as follows:

"No. 1. Was the subscription made by James McCord Company to stock in Citizens' Hotel Company a contribution to a civic enterprise? Answer. Yes.

"No. 2. Was the subscription by James McCord Company to stock in Citizens' Hotel Company made on condition, that is, upon the understanding that it would not be payable unless additional subscription, aggregating 25 per cent. of the amount originally subscribed, be obtained? Answer. No."

[1] In connection with those issues, the court instructed the jury as follows:

"You are instructed that a civic enterprise is a project or undertaking in which citizens of a city co-operate to promote the common good and general welfare of the people of the city, and that the word 'contribution' means the act of contributing or having a part or share in a common undertaking."

The principal contention presented by appellant in this court, by several propositions, is that it was without legal authority to enter into the subscription contract made the basis of the suit; in other words, that that contract was ultra vires, in that defendant was incorporated for the sole purpose of transacting a wholesale grocery business in the city of Fort Worth and surrounding territory in the various lines usually handled in connection therewith. And, in that connection, appellant cites the uncontroverted testimony of E. M. Schenecker, vice president of the company, to the effect that, in his opinion, the building of the hotel had not increased defendant's business, since all sales made by the defendant were made through salesmen visiting their customers, and that the witness did not know of a single merchant coming to Fort

Worth and buying goods in consequence of the building of the Texas Hotel. Authorities cited in support of the contention include the following: Taylor v. Taylor (Tex. Sup.) 215 S. W. 851; Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; First National Bank v. Commercial National Bank, 99 Tex. 118, 87 S. W. 1032; Desdemona v. Streety (Tex. Civ. App.) 250 S. W. 286.

In Taylor v. Taylor (Tex. Com. App.) 215 S. W. 851, the following is said:

"A corporation is the creature of the law. Its existence, rights, and powers depend upon the will of the sovereign as expressed in its charter. * * * It has only such powers as are expressly conferred, or such as by necessary implication arise out of those expressly granted and essential in carrying out the corporate purposes."

The other decisions cited are substantially to the same tenor and effect. However, those decisions did not involve any question of application of the act of the Legislature passed in the year 1917 (see Acts Thirty-Fifth Legislature, page 25), reading in part as follows:

"Section 1. No corporation, domestic or foreign, doing business in this state shall employ or use its stock, means, assets, or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law; Provided that, nothing in this section shall be held to inhibit corporations from contributing to any bona fide association, incorporated or unincorporated, organized for and actively engaged for one year prior to such contribution in purely religious, charitable, or eleemosynary activities, nor to local, district, or state-wide commercial or industrial clubs, associations, or other civic enterprises or organizations not in any manner nor to any extent directly or indirectly engaged in furthering the cause of any political party, or aiding in the election or defeat of any candidate for office, * * * or defraying or aiding in defraying the expenses of any political campaign, or political headquarters, or aiding or assisting the success or defeat of any question to be voted upon by the qualified voters of this state or any subdivision thereof; Provided, that the provisions of this act shall not in any wise affect any suit now pending in this state on the behalf of the state of Texas for any violation of unlawful contributions by any corporation. * * *"

"Sec. 3. The fact that there is now no law whereby corporations may contribute to enterprises of the nature herein named, and the importance to the public of permitting corporations to use their means, assets, and other property for the encouragement of commercial, industrial, civic, religious, charitable, and eleemosynary activities such as are mentioned in this act, constitute an emergency and an imperative public necessity demanding that the constitutional rule requiring that bills shall be read on three several days in each house be suspended, and the same is so done, and that this act take effect and be in force from and after its passage, and the same is so enacted."

Manifestly, by the provisions of that act the defendant corporation was given authority to contribute to civic enterprises or organizations of the character therein specified, and the evidence was ample to show that the undertaking by the citizens to build a hotel for the purposes noted already was such an enterprise.

The word "civic" is defined in the Standard Dictionary as meaning "of or pertaining to a city, a citizen, or citizenship," and we approve the definition given in the court's charge of a "civic enterprise" as substantially correct. Nor do we believe there was error in submitting the determination of that issue to the jury. We are of the opinion further that the word "contribution," as defined in the court's charge, was likewise correct. In Black's Law Dictionary (2d Ed.) page 264, the word "contribute" is defined as follows:

· "To supply a share or proportional part of money or property towards the prosecution of a common enterprise or the discharge of a joint obligation."

In Webster's New International Dictionary the following definition of the same word is given:

"To give or grant in common with others, as to a common stock or for a common purpose; to furnish or supply in part; to give (money or other aid) for a specified object, as to contribute food or fuel to the poor."

A like definition is given in the Century Dictionary.

In Gaston & Ayres v. Campbell Co., 104 Tex. 576, 140 S. W. 770, 141 S. W. 515, the following is quoted with approval from McCormick v. Market National Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817:

"The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interests of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law."

That doctrine is also invoked by appellant here. However, our conclusion is that a contribution by a private corporation for the promotion of a civic enterprise does not contravene any of those grounds upon which the doctrine of ultra vires rests, since the authority given by the statute to contribute to a civic enterprise is of the same dignity and legal effect as if that power should be expressly given in the charter of a private corporation, such as appellant.

[2] A further contention of appellant is to the effect that even though, under the provisions of the act of the Thirty-Fifth Legisla-

ture, authority is given to a private corporation to contribute to a civic enterprise, it does not confer authority upon one corporation to purchase stock in another corporation chartered for different purposes, even though the purchase of such stock be made for the purpose of promoting a civic enterprise. That contention was overruled by the San Antonio Court of Civil Appeals in the case of Anderson v. Kinsolving, 262 S. W. 150, which involved a subscription by the A. J. Anderson Company, a private corporation, to the corporation that is plaintiff in this case, and a petition for writ of error from that decision was dismissed by our Supreme Court for want of jurisdiction. In the opinion in that case the following was said:

"It is obvious that the purchase of the hotel stock was not for the purpose of launching the corporation into the hotel business, but was rather a contribution on behalf of the corporation towards the establishment of a new project of great moment to the city. It was a substantial expression of a laudable public spirit, and by no means usually inconsistent with a sound business policy."

The evidence introduced upon the trial of the case at bar fully supports the allegation that the subscription by appellant for stock in the plaintiff corporation was not for the purpose of engaging in the hotel business by appellant, but was merely a method adopted by a great number of citizens to effect the construction of a hotel as a community enterprise, in order to supply much needed hotel facilities for the welfare of the city at large, and not for the purpose of realizing any profit from the operation of the hotel, as a business of itself.

It is clear that by virtue of the provisions of the act of the Thirty-Fifth Legislature, already noted, appellant was given authority to contribute the amount subscribed to be used in the erection of the hotel, without any consideration therefor, except such as would be realized by the citizens at large, if the building of the same was a civic enterprise within the meaning of the statute. We perceive no valid reason why the fact that, as a partial consideration for the subscription and as an incident thereto, appellant received capital stock in the hotel corporation, which might possibly be of some substantial value, necessarily would render the subscription any the less a contribution, within the meaning of the statute. The record shows that the capital stock for which appellant subscribed was to be issued at its par value and for the full amount subscribed. Under those circumstances, there could be no liability of subscribers for debts contracted by the hotel cor-

poration, in the event of its insolvency, and therefore the stockholders in the appellant corporation could never sustain a loss in any event, beyond the amount of the contribution.

[3] The following authorities support the general proposition that an act done by a corporation is not ultra vires, if the act is merely incidental and reasonably calculated to accomplish a power expressly granted by law to the corporation; and the act of appellant in accepting stock as a partial return for the contribution, in accordance with the general plan adopted, was authorized under that rule of decisions: Richardson v. Bermuda (Tex. Com. App.) 231 S. W. 337; Desdemona State Bank & Trust Co. v. Streety (Tex. Civ. App.) 250 S. W. 286; Exchange Bank of Fort Worth v. Hensley (Tex. Civ. App.) 240 S. W. 681; Fourth National Bank v. Stahlman, 132 Tenn. 367, 178 S. W. 942; Fort Worth City Co. v. Smith, 151 U. S. 294, 14 S. Ct. 339, 38 L. Ed. 167; First National Bank v. National Exchange Bank, 92 U. S. 122, 23 L. Ed. 679; and other decisions cited in note in L. R. A. 1916A, page 584.

[4] Since a corporation can act only by some duly authorized agent, the allegation in the plaintiff's petition that the subscription contract sued on was executed by appellant, was, in effect, an allegation that the contract was executed by appellant through its duly authorized agent. Appellant filed no verified plea of non est factum, as required by statute; and, in the absence of such a plea, it is in no position to deny plaintiff's allegation that the contract was executed by appellant acting through its duly authorized agent, or to assert that the evidence conclusively showed the lack of such authority in E. M. Schenecker to execute it, even though the contract was signed "James McCord Company," without any indication in writing that the same was signed by E. M. Schenecker as vice president of that company. Thomason v. Berry, (Tex Com. App.) 276 S. W. 185.

[5] There is another assignment of error, in appellant's brief, to the refusal of the trial court to permit appellant to file a verified trial amendment to its pleadings, denying the authority of its agent Schenecker, from its board of directors, to execute the contract upon which the suit is based. But no proposition or statement from the record is submitted under that assignment, as required by the rules; and it is therefore overruled without a determination of its merits. Rules 30 and 31 for Courts of Civil Appeals, Harris Rules of the Courts (2d Ed.), and decisions there cited.

For the reasons indicated, all assignments of error are overruled and the judgment is affirmed.