**EXCHANGE BANK OF FORT WORTH v. HENSLEY & ROLAND.  (No. 2524.)**

(Court of Civil Appeals of Texas. Texarkana. March 9, 1922.)

1. **Banks and Banking ⬄96, 101—Bank's contract outside the object of its creation is void.**

A contract by a bank outside the object of its creation, as defined by Rev. St. art. 376, is beyond its powers, and is therefore wholly void.

2. **Banks and banking ⬄96—Bank may make a contract to aid in the accomplishment of its objects.**

A contract of a bank is legal if it is not expressly prohibited, and if it has a natural and reasonable tendency to aid in the accomplishment of the objects for which the bank was created.

3. **Banks and banking ⬄99 — Bank's agreement to warrant title and condition of property to purchaser who assumed seller's obligation to bank held not ultra vires.**

Where a bank, pending its action on notes and to foreclose chattel mortgage securing notes, took new notes and mortgage from third party who purchased the business and assumed the debts of maker of first notes, and thereupon

dismissed the pending suit and released maker of first notes from further liability, the bank's agreement with third party to warrant the title, quality, and condition of the mortgaged property as a part of the consideration inducing third party to purchase the business and assume the indebtedness *held* not ultra vires, in view of express authority conferred on bank "of loaning money upon real estate and personal property."

**4. Banks and banking ☞99—Buyer's assumption of seller's indebtedness to bank held sufficient consideration for bank's guaranty of title and condition of goods purchased.**

A purchaser's assumption of seller's indebtedness to bank *held* a sufficient consideration for bank's guaranty of title and condition of goods purchased on which buyer had executed a mortgage to bank to secure such indebtedness.

**5. Sales ☞425—Buyer's remedy for breach of warranty stated.**

Where goods were not utterly worthless, the buyer's remedy for breach of warranty was an action for damages, and not rescission of transaction, return of goods, and recovery of purchase money.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Suit by the Exchange Bank of Fort Worth, Tex., against Hensley & Roland, in which the defendants filed a cross-action. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Appellant sued the appellees, a partnership, to recover an unpaid balance of $275.25, evidenced by nine promissory notes for $30.65 each, with interest and attorney's fees, and for the foreclosure of a chattel mortgage on certain gasoline filling station fixtures given to secure the payment of the indebtedness. Appellant also sued out writs of garnishment.

The appellees answered, admitting the execution of the notes and chattel mortgage sued on, but, in rescission of the contract and discharge from liability thereon, pleaded failure of the consideration for which the notes and mortgage were given, which plea was based on the alleged breach of a warranty or guaranty by the bank, made at the time the notes and mortgage were executed, that the property possessed certain qualities. Appellees further, by cross-action, sought to recover damages for the breach of the alleged warranty in the sum of $200 and the $30.65 paid on the notes, and for wrongful suing out of the garnishment writ in the sum of $800.

It is shown by the evidence that W. F. White, doing an automobile business as the Glenwood Motor Company, purchased from the manufacturers the following: One 5-barrel 14-gauge steel tank; one 5-gallon gasoline stroke pump, type 36; and one 55-gallon lu-

bricating oil tank and pump. In order to fully pay to the manufacturers the purchase price of the property, W. F. White made arrangement with appellant bank to borrow the money above the amount of $280, which he had. He executed his note for the money borrowed, payable to the bank, and at the same time executed a chattel mortgage on the property to secure the indebtedness. Upon default made by W. F. White to pay the note at its maturity, the bank instituted suit to collect the debt and for foreclosure of the mortgage, and sued out a sequestration writ. While the suit was pending, and while the property sequestered was in custodia legis, W. F. White went to the appellees, Hensley and Roland, with the view of making a sale to them of his property and business, including the mortgaged property. The appellees were told by Mr. White that the pump had been damaged in the shipment to him, that the personal property in suit was under mortgage with a suit of foreclosure pending, and that the consent of the bank to a sale of it would have to be obtained. The appellees and Mr. White then agreed on a purchase and sale of all the property, provided the bank would consent to withdraw the suit against the mortgaged property and take the note of the appellees with a chattel mortgage on the same property from them to secure it in the place of the note and mortgage of White then held and sued on by the bank. Thereupon the appellees and Mr. White went to the bank and explained the agreement to the vice president. A discussion there arose between the appellees and Mr. White about the title and defects of the mortgaged property. Finally it was agreed by Mr. White, the appellees, and the vice president of the bank that Mr. White would sell and the appellees would buy the mortgaged property on the terms that the appellees execute 10 notes of $30.65 each, with interest, payable to the bank, and secured by a mortgage on the same property, in lieu and place of the notes and mortgage of Mr. White then held by the bank, and to release Mr. White and dismiss the pending foreclosure suit. At the time of the agreement and as a part of it the vice president of the bank, acting for the bank, as appellees testify, orally agreed to warrant the title, quality, and condition of the mortgaged property, and this oral agreement was a part of the consideration inducing the agreement. Appellant denied making the oral agreement. The appellant did not own nor have possession of or profess to own the property or any part of it. At the time the agreement was finally concluded Mr. White paid to the bank $75 on his note to the bank and the amount of the court costs of the pending suit against him, and then the appellees executed and delivered to the bank their ten notes for the balance

of the White indebtedness to the bank, and also executed and delivered a chattel mortgage on the identical property covered by the White mortgage. In turn the vice president, of the bank surrendered to Mr. White his note and dismissed the suit against him and released him from any further liability. The bank took the notes of appellees and their chattel mortgage given to secure them, in lieu of the White note and mortgage. The property sold appellees by White was the mortgaged property in suit, and, as testified, "The Glenwood Motor Company; that is, the lease on the building and contents."

The jury made the following findings of fact:

(1) That the vice president of the bank did orally warrant and guarantee that the mortgaged chattels "were in first-class condition capable of accurately performing the functions for which they were used in a first-class manner and were as good as new ones, wear and tear excepted."

(2) That "the chattels were not in first-class condition, that the pump was defective and would not pump properly, but as to the condition of the tank no evidence was introduced."

(3) That the garnishment writ was not sued out without probable cause.

On the verdict the court entered judgment that the plaintiff take nothing by its suit, and that the defendants recover of the plaintiff $30.65, being the amount shown to have been already applied by the bank as a credit on the notes. The appellees made tender of the mortgaged property to the appellant within reasonable time, about 20 days after the defective condition, such as found by the jury, was certainly known, as they testify, after a full and fair trial.

McLean, Scott & McLean and Sam R. Sayers, all of Fort Worth, for appellant.

Greathouse & Wade, of Fort Worth, for appellees.

LEVY, J. (after stating the facts as above).
[1, 2] The appellant first insists that a judgment should have been entered for it because, even if it be true, as found by the jury, the appellant did in fact orally agree to warrant the title and quality and condition of the mortgaged property, yet such warranty did not legally bind appellant, for it was ultra vires and void and exceeded the powers and authority granted a state bank under article 376, R. S. If the contract of the bank was outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, it is wholly void and of no legal effect. On the other hand, a contract of a bank is legal if it is not expressly prohibited, and if it has a natural and reasonable tendency to aid in the accomplishment of the objects for which it is created. Accordingly, if a contract is made by a bank within its legal power, express or implied, it may make such character of contract to aid in the accomplishment of the object for which it is made, as an individual is authorized to do. Therefore whether or not a particular act is ultra vires is dependent upon the particular contract and the power of the bank to make it.

[3] The precise contract in suit here is a contract of warranty of the title and quality or fitness of chattels mortgaged to the bank for the particular purpose of securing the payment of indebtedness to the bank. The warranty, it appears, was a term forming a part of the contract between White, appellees, and the bank, in which it was agreed that appellees should take over and pay to the bank the past-due indebtedness of White to the bank and on which the bank had entered suit for collection. The bank was not the owner of the chattels. White was the owner of the chattels, and had previously mortgaged them to the bank to secure a debt owing by him to the bank, and was selling such chattels to the appellees upon the agreement that appellees would, as a part of the consideration, take over and pay his debt to the bank, if the bank would consent to such substitution of debtors. The bank agreed to this substitution of debtors, with new notes for the amount of the unpaid debt, and with a new chattel mortgage on the identical property to secure same executed by the appellees. It does not appear, we think, that the contract of warranty of guaranty was not binding upon the bank by reason of its being ultra vires and void. The guaranty was not, it is clear, for the sheer accommodation of either Mr. White or the appellees, for their sole benefit and advantage; and neither was it an agreement, in substance or effect, on the part of the bank to answer for the debt or undertaking alone of Mr. White. If it had been such a contract, it would have been illegal and void. Fidelity & Deposit Co. v. Bank of Commerce, 48 Tex. Civ. App. 301, 106 S. W. 782, and other cases. The bank was the creditor or principal to whom the debt at the time was owing, and the appellees were binding themselves as obligors to answer for and pay the past-due indebtedness of White to the bank, as principal. When White, the mortgagor, transferred the mortgaged property to appellees, who assumed the mortgage debt, they became, by express consent of the bank, the principal debtor. It results from the position the bank and the appellees have assumed towards each other and towards the property out of which the debt or obligation due to the bank is to be paid that the relation of principal and debtor is created for the benefit of the bank regarding the debt. The bank never paid any money nor surrendered any security in consideration for the mortgage which was executed by appellees in its favor. It was given and taken solely for the purpose of securing the pre-existing debt of White,

and the bank was not in any sense a purchaser or seller of the property. The statute under which the bank was authorized expressly confers the authority "of loaning money upon real estate and personal property." Having the express authority to do so, the bank was authorized to take the mortgage in question to secure payment of the debt. There is no prohibition upon the bank to secure its loans "upon personal property" in any way it may deem advisable, and it follows, by implication, that it has the power to contract such obligations as are essential or necessary to enable it to secure its loans in any way deemed advisable. Thus, having the power to secure loans upon personal property, the bank would be authorized to sue and foreclose the mortgage, and become the purchaser at foreclosure sale, if necessary to protect the debt, and then to make sale of and warrant the title in order to collect the debt. A legal reason does not exist why, in the sale of the property as necessary to collect the debt, the bank may not make a warranty or guaranty, if it is necessary in order to effectuate a sale. It is an incident to the disposition of the property it has lawfully acquired and a means of collecting a debt. It has been held repeatedly that it is incidental to the business it transacted and to the disposition of property it has lawfully acquired for a bank to indorse and guarantee notes or other obligations which it rediscounts or sells. People's Bank v. Bank, 101 U. S. 181, 25 L. Ed. 907.

[4] We see no reason to doubt that, under the circumstances of the instant case, it was competent for the bank to give the guaranty here in question. It was beneficial for the bank to better secure its debt by taking new debtors with the security. That was a consideration sufficient to support the guaranty. To deny the bank the right to contract a guaranty of quality, if necessary, as it was here, to secure a better securing of the past-due debt for which the mortgage was partly security, would operate to disable it from properly performing its function respecting securing its loans in a necessary or essential way deemed advisable. But it does not follow that, because the contract of warranty is valid and the appellees may enforce the same upon proof of its breach, the judgment as rendered against appellant is such a one as could have been rendered in view of the pleadings and evidence.

[5] The appellant insists that the judgment in favor of appellees is unwarranted in the record, and we think the contention should be sustained. The appellees pleaded as a defense a total failure of the consideration, or, in effect, a rescission of the contract under which the notes and chattel mortgage in suit were executed for breach of the warranty. Appellees also by cross-action sought to recover damages for the breach of the warranty in the sum of $200 and the $30.65 note paid. Evidently appellees did not seek compensation in damages merely for the breach of the warranty of the fitness or quality of the chattels. There is no evidence tending to show that the chattels were utterly worthless and of no value whatever. Also the finding of the jury is substantially to that effect. There is some evidence to show that the chattels were of inferior quality or fitness, and performed their functions badly. There is no evidence to prove the difference between the real value of the chattels and chattels of the fitness and quality such as warranted to be. Consequently it must be said that the appellees manifestly relied upon their answer as a defense against the payment of the notes, predicated upon the alleged right to rescind the contract for breach of the warranty. That was not the proper legal remedy authorized in this case. In some jurisdictions it has been held that a party may treat a breach of warranty as a rescission or discharge of the contract and resist payment of the purchase price. In other jurisdictions including Texas, it is held that the party can only recoup damages, such breach not amounting to a discharge. In the case of Wright & Clark v. Davenport, 44 Tex. 164, it was expressly held that in the absence of fraud, or of an express contract to take back an article sold or transferred with guaranty, the party cannot return the article and recover back all the purchase money or abate all the purchase price. The remedy is not for rescission, but by action for damages on the contract of warranty. See, also, French Piano & Organ Co. v. Thomas, 36 Tex. Civ. App. 78, 80 S. W. 1063, and other cases.

Because the judgment is not warranted by the evidence and the pleading on which it was rendered, it is reversed, and the cause is remanded.