### FIRST STATE BANK OF HUGHES SPRINGS v. SANFORD et al.
#### (No. 8893.)

(Court of Civil Appeals of Texas. Dallas. Nov. 3, 1923.)

**1. Banks and banking ⊚⊃154(5)—Petition should allege that checks were accepted in writing.**

Where plaintiff sought to hold defendant bank liable on its acceptance of checks drawn by a codefendant, under Uniform Negotiable Instrument Act, §§ 132, 135, 185, 189 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—132, 6001—135, 6001—185, 6001—189), petition should have alleged that checks had been accepted in writing either after execution or by an unconditional promise in writing to accept same before actually drawn.

**2. Banks and banking ⊚⊃154(5)—Petition should allege that money was deposited to credit of codefendants sufficient to pay checks sued on when presented.**

In a suit against a bank for failure to pay checks, the bank's liability being predicated on the fact that other defendants had contracted to deposit sufficient money to discharge the checks, a recovery could not be had without allegations and proof that money was on deposit to the credit of such other defendants sufficient to pay the checks when presented.

**3. Appeal and error ⊚⊃916(1)—On refusal of appellant to amend after exception sustained to petition for not alleging that agreements were in writing, they will be treated on appeal as being oral.**

Where appellant refused to amend his petition after special exceptions had been sustained for failure to allege that the agreements on which liability was predicated were in writing, the agreements will be treated on appeal as being oral; for it is assumed that appellant would have removed the effect of the special exceptions being sustained, if existing facts would have sufficed.

**4. Banks and banking ⊚⊃96—Partnership contract is ultra vires.**

A contract of copartnership, by which a bank assumed a joint liability, held outside of the object of its creation, under Rev. St. 1911, art. 376, and ultra vires.

**5. Pleading ⊚⊃192(6)—Matters appearing on face of petition properly considered on general demurrer.**

In action against a bank, the fact that the undertaking sought to be enforced was ultra vires, and did not create a legal liability against the bank, was properly considered under and determined by general demurrer, where such fact appeared on the face of the petition.

**6. Banks and banking ⊚⊃101—No estoppel can arise against a bank by reason of any liability incurred on an unauthorized undertaking.**

An attempt by a bank to enter into a contract of copartnership, being beyond its charter powers, and all parties dealing with the bank being chargeable with knowledge of that fact, no estoppel could arise against the bank by reason of any liability incurred on such unauthorized undertaking.

**7. Frauds, statute of ⊚⊃148(1)—Agreement pleaded held a verbal agreement to answer for the debt or default of another.**

An allegation that a bank guaranteed or became surety for the payment of certain checks, drawn against the account of defendants, on which money was advanced by plaintiff for defendants' use, without any allegation that the checks were accepted by the bank in writing, held to allege an agreement within the statute as being a verbal undertaking to answer for the debt or default of another.

**8. Banks and banking ⊚⊃99—Bank has no authority to enter into a contract of guaranty or suretyship.**

A contract by which a bank guaranteed or became a surety for the payment of certain checks drawn on it is ultra vires.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Action by the First State Bank of Hughes Springs against Tom N. Sanford and others. From a judgment sustaining the plea of privilege of defendant C. W. Burgess, plaintiff appeals. Affirmed.

Beavers & Mansell, of Winnsboro, for appellant.

M. D. Carlock, of Winnsboro, for appellees.

VAUGHAN, J. This is the second appeal of this case. For opinion on former appeal see First National Bank of Hughes Springs v. Sanford et al., 228 S. W. 650.

Appellant, as plaintiff in the court below, filed its suit against appellees Tom N. San-

---

ford and C. W. Burgess, of Dallas county, Tex., and Dan LaRoe, of El Paso county, Tex., and Merchants' & Planters' State Bank of Winnsboro, Wood county, Tex., as defendants therein. The following allegations copied from appellant's petition, only need be considered in disposing of this appeal:

"That about December 15, 1919, and prior thereto, LaRoe & Burgess, as partners, were engaged in constructing roads in Wood and other counties; that they accepted contracts for that purpose, employing large numbers of men, and subcontracted portions of their said contracts. That they purchased large quantities of gravel and other building materials; had such gravel mined, worked, and transported by their employees and subcontractors to various locations to be used in their construction work. That said firm, as partners, and for themselves individually, received and paid out large sums of money in connection with their said contracts. That before and after December 15, 1919, LaRoe & Burgess were customers of Merchants' & Planters' State Bank of Winnsboro, Tex., and said bank became and was the depository for said defendants. That said bank, in its corporate capacity and for valuable consideration, became and was an agent, as a banking institution, for said defendants, and in that capacity undertook to and did receive large sums of money from Burgess and LaRoe as depositors, and undertook to and did pay out for said LaRoe & Burgess large sums of money for labor, gravel, and other materials used by them in their road work. That said bank had authority to and did charge to the account of LaRoe & Burgess money paid out by it to their account and for their use and benefit; said money being on deposit to the credit of said named defendants as a checking account.

"That about December 15, 1919, LaRoe & Burgess contracted with Tom N. Sanford to mine and prepare for shipment, for their benefit in their construction work, certain gravel at a point near Hughes Springs, Tex. That it was agreed between LaRoe & Burgess and said Sanford that Sanford should hire labor and secure material and begin the mining of gravel at said place, and that LaRoe & Burgess would furnish money to Sanford with which to pay for labor and material used in preparing to mine and in mining and transporting said gravel. That it was also agreed between Sanford and Merchants' & Planters' State Bank that defendant bank would pay for all gravel and material used by Sanford in the operations and purchased by Sanford and charge same to the account of LaRoe & Burgess. That said LaRoe & Burgess and said defendant bank, on or about said date, contracted with Sanford to begin mining and transporting gravel for said defendants. That Sanford, for himself and for LaRoe & Burgess and Merchants' & Planters' State Bank, began mining and transporting gravel for the purpose stated, with the understanding that all money used in paying for the labor and material would be furnished him by said bank and that he (Sanford) had the right to employ labor and purchase material to be paid for by LaRoe & Burgess, through and by defendant bank; and by virtue of said contract defendants jointly and severally became directly and primarily liable for money obtained and used for labor and material contracted for and used by Sanford.

"About January 15, 1920, defendant Sanford informed plaintiff of his contract with defendants LaRoe & Burgess and Merchants' & Planters' State Bank, and plaintiff, relying on the promise of LaRoe & Burgess, defendant bank, and said Sanford, to repay all money paid out by it for the purpose of said contract, did, on the dates hereinafter mentioned, at the request of Sanford, furnish money to defendants in paying for labor and materials as follows: January 15, 1920, to cash paid to Sanford to pay for labor, $350; January 22, 1920, to cash paid to Sanford to pay for labor, $500; January 22, 1920, to cash paid to Aycock & Poole for Tom N. Sanford, $452.14; January 22, 1920, to cash paid to W. B. McMillan & Son for Tom N. Sanford, $217.47—total $1,519.61.

"That each of said amounts were paid in money by plaintiff to and for defendants. That said amount of money was used in paying for labor and material in mining and transporting gravel. Each of said amounts were paid by plaintiff after defendant bank, through its legally authorized agent and representative, had promised to repay plaintiff for all funds paid by plaintiff for it to Sanford. That defendant bank, before and at the time plaintiff paid said money, originally promised to pay plaintiff said amount, and authorized plaintiff to pay each amount for the purpose of taking care of payrolls for labor and materials due by defendants. That defendant bank, by its authorized agent, acting within the scope of his authority, and for valuable consideration, originally promised to repay plaintiff said money. That plaintiff had a right to and did rely on the promise of defendant bank, made through and by its cashier and agent, to repay said money. That said money was paid and used in compliance with the promise, obligation, and original undertaking that was made by all the defendants in the manner stated. That the items of $350 and $500 were paid to the defendant Sanford for the use of all the defendants—Sanford drew drafts on defendant bank payable to the order of plaintiff. That the $452.14 item was paid to Aycock & Poole for the defendants after Sanford had issued his draft on defendant bank in payment for material used in mining said gravel. Said draft being indorsed and transferred to plaintiff, plaintiff paid said sum in money to Aycock & Poole. That the $217.47 item was paid to W. D. McMillan & Son after Sanford had executed and delivered them his check for said amount, drawn on defendant bank, payable to the order of McMillan & Son.

"Prior to plaintiff paying defendants said sum of $1,519.61, LaRoe & Burgess had agreed to furnish funds to Sanford and said money was placed with defendant bank for the purpose, and said bank, through its cashier, agreed to pay out said funds and promised to pay plaintiff said amount of money, and plaintiff paid out same for defendant bank and for the use of all of said defendants; and by said contract, and by their promise to pay, and by authority given and extended to Sanford, defendants LaRoe & Burgess became liable and bound to pay plaintiff said sum of $1,519.61.

That defendant bank, having obligated itself to pay the money to Sanford to be used for said purposes out of the funds of LaRoe & Burgess, and having undertaken to serve its customers in that capacity and for valuable consideration, and by its original promise to repay plaintiff for all funds paid out by it, said bank became bound and liable to pay plaintiff said amount of money, which said promise was originally made before and at the time Sanford obtained said money. That said Sanford, by obtaining said money from plaintiff and agreeing to repay the same, became bound and liable to pay plaintiff said amount of money. Plaintiff says that by virtue of the contract and promises made by all the defendants they each and all became jointly and severally liable for said sum of money—$1,519.61 with 6 per cent. interest from date of each payment.

"Plaintiff says that at the time it furnished said money to Sanford he was the legally authorized agent of LaRoe & Burgess and of defendant bank, and was employing labor and buying material for the benefit of each and all of said defendants, and the defendant bank, acting as an agent and banking institution for its customers, LaRoe & Burgess, and, within the scope of its authority and for valuable consideration, agreed to pay the amount paid by Sanford for labor and material in said business enterprise. That Sanford, at the time he obtained said money from plaintiff, had authority to act and was acting for himself and as agent for LaRoe & Burgess and defendant bank. That each and all of said defendants became bound and liable to pay, etc.

"Plaintiff says in addition to the contracts and original promises made by defendant bank, in connection with the other defendants, that said bank, in due course of business, agreed with said Sanford to accept and pay all drafts and checks drawn upon it by Sanford and used for labor and material in mining said gravel, and that defendant bank thereafter promised plaintiff that it would pay and accept for payment all checks and drafts drawn on it by Sanford used to pay for such material and labor; and, at the time and before plaintiff paid each of the above amounts, defendant bank did agree to accept and did accept for payment such drafts and checks, and said bank assured plaintiff that it would take care of and pay all of said drafts and pay plaintiff such sums of money as plaintiff might pay out in cashing such drafts; and, in pursuance of such agreement by defendant bank, it did accept such drafts cashed by plaintiff in payment of said specified amounts. That, prior to the drawing of said several drafts herein sued on, several other drafts were drawn on defendant bank by Sanford in pursuance of said agreement and were promptly paid by defendant bank, and that by reason of the promise made to it to accept for payment and to pay said checks and drafts, plaintiff paid said sum heretofore stated to Sanford. That each of the drafts and checks so drawn and paid by plaintiff were drawn and signed by Tom N. Sanford, and they were each accepted by Merchants' & Planters' State Bank at and before the time they were drawn. That after the drawing of said checks and drafts and the agreement by defendant bank, by its cashier, to well and truly pay each of them, and after plaintiff had paid said amounts to Tom N. San-

ford and his payees therein named as per said agreement, defendant bank has failed and refused to pay any of said drafts to plaintiff's damage," etc.

Appellee Sanford did not answer. Appellee Dan LaRoe answered by general denial. Appellee C. W. Burgess properly pleaded his privilege to be sued in Dallas county, Tex., which plea was duly controverted by appellant. Appellee Merchants' & Planters' State Bank of Winnsboro answered by general demurrer, special exceptions, general denial, and special pleas not necessary to be here stated, as the case was determined in the court below on the exceptions addressed to appellant's petition. On the hearing of said plea of privilege and contest, said plea was sustained and the cause ordered transferred as to appellees Tom N. Sanford, Burgess, and Dan LaRoe, to one of the district courts of Dallas county, Tex., having civil jurisdiction. Based on the exceptions being sustained to appellant's petition on the ground that same did not disclose a joint cause of action against appellees, the Merchants' & Planters' State Bank of Winnsboro and C. W. Burgess, the court sustained said plea of privilege; appellant refusing to amend in order to meet the ruling of the court on said exceptions.

In view of the following agreement contained in the record, it will not be necessary to make further reference to said plea of privilege, controverting affidavit thereto, or other pleadings filed by appellees:

"It is agreed that the Merchants' & Planters' State Bank of Winnsboro, Tex., one of the defendants in said cause, is a banking corporation under and by virtue of the laws of the state of Texas, and that said defendant has, and has had at all times involved in this suit, its domicile and principal place of business at Winnsboro, in Wood county, Tex.

"It is agreed that the defendant, C. W. Burgess, now resides in Dallas county, Tex., and so resided at the date said suit was filed, at the date of service of process upon him, at the time of the preparation and filing of his plea of privilege herein, and at the time said plea of privilege was considered and passed upon by this court; and that said defendant had not resided in Wood county, Tex., nor elsewhere outside of Dallas county, Tex., at any of the dates mentioned.

"It is agreed that none of the other defendants, to wit, Dan LaRoe and Tom N. Sanford, live in Wood county, Tex., and that neither of them so resided at any time during the pendency of this suit, from the date of the filing of the same up to and including the date said plea of privilege of C. W. Burgess was passed upon by the court, and that neither of said named defendants had filed any plea of privilege.

"It was agreed by and between the plaintiff, on the one hand, and the said C. W. Burgess and his attorney on the other hand, that said plea of privilege of C. W. Burgess to have this suit transferred to Dallas county, Tex., should be sustained in case it did not appear that plaintiff's petition stated a joint cause of action

against said defendants C. W. Burgess and the Merchants' & Planters' State Bank of Winnsboro, Tex., and that if said petition be finally held to state such joint cause of action that said plea of privilege should be overruled."

This agreement and pleadings were the basis for rendering the judgment appealed from, and therefore but one question is presented by this appeal, to wit, "Does appellant's petition state a joint cause of action against appellees C. W. Burgess and the Merchants' & Planters' State Bank of Winnsboro?" If so, then the judgment of the court below should be reversed and the cause remanded. However, if not, then said judgment should be affirmed.

The legal effect of the several transactions involving the issuance of checks as alleged in appellant's petition, and the nonpayment of same, must be tested by the Uniform Negotiable Instrument Act passed by the Thirty-Sixth Legislature (Acts 1919, p. 190 [Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197]), as the rights of the parties to such transactions are governed by its provisions, especially the following sections:

Section 185 (article 6001—185): "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 132 (article 6001—132): "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than [by] the payment of money."

Section 135 (article 6001—135): "An unconditional promise in writing to accept a bill before it is drawn is deemed an actual acceptance in favor of every person who upon the faith thereof, receives the bill for value."

Section 189 (article 6001—189): "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

[1] Appellant's petition does not allege that the checks sued upon, or either of them, were accepted by appellee bank in writing. Under the law the checks in question occupy the same position that a draft would if drawn on appellee bank, as appellant seeks to hold appellee bank liable on the ground that said checks had been, prior to the execution of same by Sanford and the receipt of same by appellant, accepted by appellee bank. By reason of this omission, a special exception was addressed to said petition and sustained by the court. Under this phase of the case, appellee bank must be treated as occupying the position of a drawee in a draft, and, in order to present a case showing liability on the part of appellee bank on account of the alleged acceptance of said checks, said petition should have contained the additional allegation that said checks had been accepted in writing, duly signed by appellee bank, either after the execution of said checks or by way of an unconditional promise in writing to accept same before said checks were actually drawn. Therefore the court did not err in sustaining said special exception. Lone Star Trucking Co. v. City National Bank of Commerce, (Tex. Civ. App.) 240 S. W. 1000; First National Bank of Hughes Springs v. Sanford, 228 S. W. 650; sections 132–134, art 2, Uniform Negotiable Instrument Act; Acts Thirty-Sixth Leg. p. 190 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—132 to 6001—134).

[2] It is not alleged that at the time the checks in question were respectively presented that appellees LaRoe and Burgess had the money on deposit with appellee bank to their credit sufficient to pay the checks, or either of them. Under the theory of the case that appellee bank was liable by virtue of the allegations that appellees Burgess and LaRoe had contracted to deposit and had deposited money with appellee bank sufficient to pay off and discharge said checks, we must assume, in passing on the exception thereto, that the allegations in reference to same are true; yet a recovery could not be had thereon without the further allegation and proof that the money was on deposit in appellee bank to the credit of said appellees Burgess and LaRoe, sufficient to pay the checks at the time they were respectively presented to appellee bank for payment. Therefore the court did not err in sustaining said exception. Bingham v. Emanuel (Tex. Civ. App.) 228 S. W. 1016.

[3] The appellant refused to amend its petition after the above special exceptions had been sustained, and, in passing upon the assignment of error based on the general demurrer being sustained, we are therefore to treat the petition as showing that the agreements alleged against appellee bank appear from said petition to be oral, for it is to be assumed that appellant would have removed the effect of said special exceptions being sustained if the existing facts would have sufficed.

[4] Appellant's petition contains allegations which, in effect, we will assume, charge the existence of a copartnership between appellees Tom N. Sanford, C. W. Burgess, Dan LaRoe, and the Merchants' & Planters' State Bank, which would be sufficient to show, not only a separate liability on the part of the appellee bank, but a joint liability with the other appellees, if appellee bank was in position under the law, acting through its duly accredited officers and agents, to have made and entered into a contract creating such relationship as alleged in said petition. It must be borne in mind that appellee bank is a corporation created under the law and

chartered to carry on certain well-defined business, to which said bank, acting through its officers, is confined and limited, vis:

"To conduct the business of receiving money on deposit and allowing interest thereon, and buying and selling exchange, gold and silver coins of all kinds, of loaning money on real estate and personal property and upon collateral and personal securities at a rate of interest not exceeding that of the law."

[5] This embraces the entire field of operation that appellee bank was authorized under the law to engage in, and, of its charter powers and limitations upon its rights as a banking institution to engage in business, appellant, through its duly accredited and acting officers, were charged with notice. Therefore it is apparent that the attempt on the part of the officers of appellee bank to make and enter into the contract alleged was far beyond the scope of their authority, in that appellee bank was engaged only in the banking business and its officers were not authorized under the banking law to enter into a partnership contract with any firm, person, association of persons, or corporation, to carry on any other business than that authorized by its corporate powers. Exchange Bank of Fort Worth v. Hensley & Roland, (Tex. Civ. App.) 240 S. W. 679; Revised Statutes 1911, art. 376. Therefore such an undertaking on the part of appellee bank, acting through its officers, as alleged in appellant's petition, was ultra vires, and not to be enforced as creating a legal liability against appellee bank. This, appearing on the face of the petition, was properly considered under and determined by the general demurrer.

[6] In so far as appellant's petition attempts to plead an estoppel against appellee bank and thereby create a legal liability or right to recover on said drafts, we have searched in vain for allegations showing such misrepresentations on the part of appellee bank, or any one authorized to act for it, to the effect that material representations were made to appellant, through its officers, upon which appellant was induced to act, the falsity of such representations, and that appellant relied thereon, being ignorant of the true facts at the time said checks were acquired, whereby appellant was induced to believe that appellee bank, acting through its officers, had the authority to make and enter into the contract sought to be enforced. It is disclosed by such allegations that appellant, through its officers, knew that it was dealing with a banking institution incorporated under the laws of the state of Texas, chartered for the purpose of engaging in the banking business under the laws defining and limiting its powers of action under its corporate existence, and appellant's officers, acting for it and in such transaction, were charged under

the law with a knowledge of the charter powers conferred on appellee bank, its rights, with limitations and restrictions, to carry on and conduct banking business and none other. Therefore it is hard to conceive how appellant could be permitted to successfully contend, notwithstanding the imputation of such knowledge, that by reason of the fact that an agreement was made on which appellant bank assumed the responsibility of acting, therefore, in order to protect and save itself harmless from loss on account of such improvident conduct, appellee bank should be held to be estopped, and thereby appellant permitted to recover on account of such unauthorized and illegal undertaking. Such a holding would be in strict violation of the law intended, not only to protect stockholders from unauthorized and improvident acts and conduct on the part of the representatives and acting agency of a corporation, but also creditors having an interest in the proper administration of the assets and the general public having a higher interest in confining the operations of a corporate power within the legitimate realm for which, it was created and authorized to transact business. Therefore we must hold that said petition is without merit in this respect. San Antonio National Bank v. Conn. (Tex. Civ. App.) 237 S. W. 353.

[7, 8] Appellee bank had no authority, under its charter powers, to engage in a guaranty or surety business. Therefore, in so far as appellant's petition alleges an undertaking on the part of appellee bank to guarantee the payment of or to become surety for the payment of checks drawn by Tom N. Sanford on the Merchants' & Planters' State Bank against the account of Burgess and LaRoe, in carrying on the gravel mining buiness, as alleged in its petition, on which money was advanced by appellant from time to time for the use and benefit of Burgess and LaRoe, the agreements so reflected by said allegations are shown to be clearly within the statute of frauds as being a verbal undertaking to answer for the debt or default of another; and, further, clearly ultra vires and unenforceable, as appellee bank is not authorized by its charter powers, except in the ordinary course of banking, to guarantee the payment of any sum of money which does not include money accrued to be paid under the conduct of a business by other parties or to become surety for the payment of any sum due and owing by another. Groos v. Brewster (Tex. Civ. App.) 55 S. W. 590.

We therefore conclude that appellant's petition fails in any respect to show a cause of action against appellee bank. Therefore the judgment of the court sustaining the plea of privilege and ordering this cause transferred should be in all things affirmed.

Affirmed.