## JONES v. FIRST STATE BANK OF DUMAS.

### No. 5120.

Court of Civil Appeals of Texas. Amarillo.

Dec. 2, 1940.

James E. Anderson and Henry L. Ford, both of Amarillo, for appellant.

Tatum & Tatum, of Dalhart, for appellee.

STOKES, Justice.

On the 13th of January, 1936, appellant, Fred W. Jones, purchased from Fox-Harvey Motor Company at Dumas an automobile, agreeing to pay therefor the total sum of $475. Of this amount $125 was paid by delivering to the Motor Company an old car owned by appellant and, in order to pay the balance in cash, he negotiated a loan from appellee, First State Bank of Dumas, in the sum of $350. The negotiations for the loan resulted in an agreement that appellant would execute his note payable to the bank in the sum of $373.95 and secure the same by a chattel mortgage on the automobile being purchased by him. It was also agreed that an insurance policy indemnifying appellant against loss by fire, theft, collision and other contingencies would be obtained, containing provision for the loss, if any, to be payable to appellee as its interest may appear. The note and chattel mortgage were executed on the date above mentioned and the insurance policy procured from a local agency by the cashier of appellee bank on the same day for the amount and containing the provisions agreed upon. The note was dated January 17, 1936, which

seems to have been a mistake, but it is immaterial to any issue in the case. The principal amount specified in the note was $373.95, which included $20 estimated premium necessary to obtain the insurance policy, together with advance interest and some smaller items, and it also contained the provision that it was to be paid $31.17 on the 10th of each month, beginning February 10, 1936. In the lower left-hand corner of the note is the provision that the July, August and September payments are suspended. The insurance policy covered the period from the 13th of January, 1936, to the 13th of January, 1937, and expired on the last named date. Appellant made payments of $31.17 on or near the 10th of each succeeding month except the months of July, August and September, 1936, which were suspended by the specific provision of the note, and in the month of April, 1937, before the last payment was made by appellant, the automobile was involved in a collision which in some manner caused it to catch fire and it was practically destroyed, having thereafter a value of only $75 as junk.

After making the last payment on April 28, 1937, appellant filed this suit, alleging that at the time he executed the note to the bank it was agreed between him and the cashier that $20 would be added to the note and used by the bank to pay the premium for the insurance policy which would be procured by the cashier and retained by the bank as additional security to appellant's note. He alleged substantially that, while the note on its face provided that it should mature on January 17, 1937, yet it also provided that it should be payable in installments of $31.17 each and the July, August and September payments were suspended, which automatically and by agreement between him and the cashier extended the period of the loan to the 10th of April, 1937, a period of fifteen months instead of twelve months as provided in the preceding portion of the note. He alleged that the failure of the bank to carry out its agreement and procure an insurance policy covering the entire period of the loan resulted in depriving him, without his knowledge, of insurance on the automobile from the 13th of January, 1937, until the 10th of April, 1937, and that the automobile having been destroyed by fire within that period, he had been damaged in the sum of $350 for which he sued.

Appellee answered by general demurrer and numerous special exceptions, one of which was that the allegations of the petition concerning any agreement on its part to procure an insurance policy on behalf of appellant, even if true, would be ultra vires; beyond its legal power or authority to make, and was, therefore, void and unenforcible. It also pleaded a general denial and set up other defenses not necessary to detail here.

A jury was empaneled to try the case, but at the close of the testimony, upon motion of appellee, the court instructed the jury to return a verdict in favor of appellee and such verdict being returned in response to the charge of the court, judgment was entered that appellant take nothing by his suit.

Appellant duly excepted to the judgment, and his exception being overruled, he gave notice of appeal and has perfected an appeal to this court in which he assigns as error the action of the court in giving to the jury a peremptory instruction in favor of appellee and in entering judgment upon the verdict returned in response thereto.

The controlling issues presented by the assignments of error urged by appellant and the contentions made in response thereto by appellee are, first, whether or not the agreement which appellant alleges that appellee through its cashier made with him to procure the insurance policy covering a period of fifteen months was ultra vires and, secondly, whether the court erred in giving to the jury the peremptory instruction in favor of appellee, thus, in effect, depriving appellant of a jury trial.

Appellee contends that no error was committed by the court in giving the peremptory instruction because appellant is a state banking corporation, organized, existing and doing business under and by virtue of the laws of the State of Texas, having such powers only as are given to it by Art. 392, R.C.S., 1925, Vernon's Ann.Civ.St. art. 392, which does not include the power to make such a contract or in any manner to bind itself by such a contract as that which is alleged by appellant concerning its agreement to procure for him a policy of insurance on his automobile.

Generally speaking, the article of the statute referred to encompasses the entire field of operation in which a bank organized under the laws of this state is

entitled to engage. Like other corporations it is forbidden by the law to exceed the limits of authority specified in the statute and attempts on the part of its officers to enter into contracts or engagements not contemplated by the statute are ultra vires and, therefore, unenforcible. Such contracts are void and cannot serve to bind the corporation or subject it to liability for failure or refusal to comply with its provisions. Sound public policy demands that agreements or undertakings attempted to be entered into by the officers of such a corporation not included within the expressed statutory powers should be closely scrutinized and that those in charge of such an institution should not be permitted to bind it to speculative undertakings in which the corporation has no direct interest or to contracts which can have no purpose other than the accommodation of its customers. First State Bank v. Sanford, Tex.Civ.App., 255 S.W. 644; First Nat. Bank v. Crespi, Tex.Civ.App., 217 S.W. 705.

■ This does not mean, however, that engagements, contracts or agreements of banks not specifically incorporated in the statute are illegal and cannot be enforced if they come within the purposes for which the bank has been created or are characterized by a tendency to aid in the accomplishment of those purposes. If a bank, or other corporation, performs an act or enters into an engagement for its own protection, if it be incidental to the powers granted to it by law, its act in doing so is valid and its contract so made will be enforced. First Nat. Bank v. Greenville Oil & Cotton Co., 24 Tex.Civ. App. 645, 60 S.W. 828; James McCord Co. v. Citizens' Hotel Co., Tex.Civ.App., 287 S.W. 906; Desdemona State Bank & Trust Co. v. Streety, Tex.Civ.App., 250 S.W. 286; Exchange Bank v. Hensley & Roland, Tex.Civ.App., 240 S.W. 679; Richardson v. Burmuda Land & Live Stock Co., Tex.Com.App., 231 S.W. 337.

■ The record shows without dispute that, when the loan was made, it was mutually agreed that the insurance policy would be procured from a local insurance agency by the cashier of appellee and, to pay the premium thereon, the sum of $20.00 was added to the note and ultimately paid by appellant. The cashier testified that he told appellant that appellant would have to take out insurance on the automobile and it was agreed the policy would be retained, and it was retained,

by appellee as additional security of the note. The matter was handled in this way and appellant never saw the policy or had it in his possession but it remained with appellee during the entire time. Thus it will be seen that the agreement entered into by appellee to procure the insurance policy and the act of its cashier in carrying out the agreement was incidental to the security for the loan and was for the benefit of appellee as well as appellant. It was therefore calculated to accomplish a power expressly granted to appellee by the statute, that is, lending money upon personal property and taking security therefor. Such contract and the act of procuring the insurance was, therefore, not ultra vires and this contention of appellee is without merit.

■ The alleged contract or agreement of the cashier of appellee to procure the insurance not being ultra vires, but one which appellee had power and authority to make, it then becomes pertinent to ascertain whether or not the trial court committed error in giving to the jury a peremptory instruction to return a verdict in favor of appellee. The rule is well established in this and practically all other jurisdictions that if there is any material issue of fact arising from the evidence it must be submitted to the jury where a jury has been empaneled to try the case. Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725. If, therefore, there was an issue of fact raised by the evidence and material to the controversy, it was the duty of the court to submit the case to the jury and his refusal to do so was reversible error. Both appellant and L. G. Daugherty, the cashier of appellee bank, testified that it was agreed between them, when the loan was made, that the insurance policy would be for the amount of the note and that it would cover the period of the loan. The policy was written to cover a period of only twelve months following the date of the loan and expired on January 13, 1937. The pertinent inquiry is, therefore, what period of time was covered by the note executed by appellant as agreed by them at the time the loan was made? Daugherty testified that it was his intention to make the loan for only twelve months, while appellant testified that his understanding was it would cover a period of fifteen months; be payable in installments of $31.17 each, with the July, August and September installments suspended. This necessarily

would extend the period covered by the note to fifteen months, making the last payment fall due on the 10th of April, 1937. Ordinarily the note would settle this question. If it specified for only one due date, in the absence of allegations of fraud, accident or mistake, the provision of the note would be conclusive and parol testimony would not be admissible to change its provisions. Hendrick v. Chase Furniture Co., Tex.Civ.App., 186 S.W. 277. Such is not the case, however, in the note executed by appellant. While in one place it provides that it is payable January 17, 1937, yet in another place it provides that it is to be paid $31.17 on the 10th of each month beginning February 10, 1936, and it also contains the provision that the July, August and September payments were suspended. Manifestly, this last provision would extend the period covered by the note to fifteen months and cause the final installment to fall due April 10, 1937. The record does not show that appellee demanded payment of the entire balance on January 17, 1937, but acquiesced in appellant's interpretation of the contract by permitting the entire note to be paid in installments which extended it to April 10, 1937. This would suggest that the parties interpreted the contract in accordance with the contentions of appellant. It is obvious that, standing alone, the note is ambiguous. Its language is uncertain and doubtful. It is susceptible of more than one meaning and it is a familiar rule of evidence that in such cases parol evidence is admissible to explain its meaning and make clear the ambiguity in order to arrive at the real intention of the parties when the contract was made. Jarecki Mfg. Co. v. Hinds, Tex.Civ.App., 295 S.W. 274; Leonard v. Prater, Tex.Com.App., 36 S. W.2d 216, 86 A.L.R. 499; Tom v. Roberson, Tex.Civ.App., 182 S.W. 698.

If appellee had power and authority to make the contract with appellant to procure the insurance policy, which it undoubtedly did have, and it contracted with him to procure an insurance policy on the automobile that would effect insurance thereon for the entire period covered by the note, and it failed to do so, we can see no reason why it would not be liable to appellant for any damages suffered by him on account of such failure. Such a contract would not be without consideration because the insurance fortified appellant's security and appellant derived benefit from it. The ambiguity in the provisions of the note with reference to the date of its final maturity and the conflicting testimony of the witnesses with reference to that matter presented an issue of fact that should have been submitted to the jury and, in our opinion, the court below committed error in giving to the jury a peremptory instruction to return a verdict in favor of appellee. The effect of such instruction was to deprive appellant of his right of trial by jury and this necessitates a reversal of the judgment.

For the error pointed out, the judgment of the court below will be reversed and the cause remanded.